UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                                                    CRIMINAL ACTION NO. 3:10CR-142-S

GEORGE HARRIS                                                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, George Harris, to suppress all evidence seized as a result of a June 30, 2010 order authorizing the electronic surveillance of phone number 502-773-6022 purportedly used by Harris (hereinafter the "target phone"). (DN 52). Harris seeks a hearing on his motion pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), urging that he has made a substantial preliminary showing to challenge the existence of probable cause. He contends that the affidavit in support of the wiretap application contained false statements made by the agent. However, he has offered no evidence by way of affidavit or other documentation to controvert the statements in the affidavit.

Harris isolates two statements which he contends are untrue. First, he asserts that there were not enough calls intercepted between Harris and Smith, the alleged head of a Louisville drug trafficking organization, to constitute "numerous" calls, as averred in the Affidavit. Second, he contends that the conversations did not contain enough specific language to justify a statement that Harris appeared willing to "openly" discuss drug trafficking, or, indeed, that he discussed drug trafficking at all.

Harris notes that if, in seeking authorization for a wiretap, an affiant includes a false statement in the supporting affidavit, either knowingly and intentionally, or with reckless disregard for the truth, the false statement must be disregarded and the remainder of the affidavit must be evaluated for probable cause to support the wiretap order. *Franks,* 438 U.S. at 155-56.[1] A wiretap affidavit is presumed to be valid. *Franks v. Delaware*, 438 U.S. 152, 172 (1978). However, "where a defendant makes a substantial preliminary showing that such a false statement was knowingly or recklessly made, and if the allegedly false statement was necessary to a finding of probable cause, the court must conduct a hearing to permit the defendant to establish by a preponderance of the evidence that the affiant committed perjury or acted in reckless disregard of the truth in making the statement. *Franks*, 438 U.S. at 155-56. If perjury or reckless disregard is so established, the court must then determine whether the remainder of the affidavit is sufficient to establish probable cause for issuance of the authorization. *Id.* at 156. If the remaining content is insufficient to establish probable cause, the fruits of the order of authorization must be excluded. *Id.*

For the reasons articulated below, we conclude that Harris' motion falls short of that which is required to obtain a *Franks* hearing. Harris has not shown that any statement in the affidavit was false or knowingly or recklessly made. *Franks, supra.* The affidavit, when considered as a whole, clearly establishes probable cause for issuance of the wiretap. The motion to suppress will therefore be denied.

---

[1] Harris cites to *United States v. Rice*, 378 F.3d 704, 711 (6th Cir. 2007) for the proposition that the affiant need not have included a false statement deliberately to mislead the issuing officer; a reckless mistake is sufficient. He then states that "*Significantly*, the Rice investigation is related to the instant investigation and the Rice wiretap is mentioned in the affidavit for the June 30 order... The outcome of the probable cause challenge to the Rice wiretaps is *not* of significance here, as the challenge to the wiretap of the phone in question rises or falls on its own merit.

Beginning in July of 2009, the Louisville District Office ("LDO") of the Drug Enforcement Administration was actively investigating suspected drug activity by Darek Smith and his associates. In April, 2010, the LDO began intercepting calls between Smith and George Harris. In particular, the affidavit recounts that a series of calls were intercepted over Smith's telephone between April 19 and 22, 2010. Video surveillance obtained during that time showed Smith placing a large black duffel bag into a white Cadillac DTS driven by Harris which was suspected to be a multi-kilogram supply of cocaine. Aff. ¶ 41.

Among other information concerning Harris, Paragraphs 42 through 55 of the Affidavit recount conversations between Smith and Harris intercepted from Smith's phone between April 19 and 21, 2010 which were believed to be in connection with the transportation of a shipment of cocaine.

At one point, there was a dialogue between Smith and Harris which indicated that they realized they were under surveillance. Harris stated "...let me see...I'm gonna dump that shit this way and have my people come jump in with you and leave the car." Smith then instructs Harris to "go somewhere and get clean." The affiant recounted that Smith and Harris tried to evade the police when they discovered that they were being followed. Harris stated "I'm gonna bust that left and then cut hard right, cause he gonna keep going straight...just keep going left with me come on..." *Id.*

In addition to this series of events and the intercepted conversations from Smith's phone, the affidavit is replete with additional information which, when viewed as a whole, constitutes probable cause to believe that communications concerning narcotics trafficking would be intercepted from the phone sought to be tapped.

Much of the information obtained from a confidential informant concerning Harris' location, vehicles, and activities was corroborated by the investigating agents. Pen registers established that in May and June, 2010, seventeen calls were made from the target phone to or from Smith. Thirty-seven calls were made between the target phone and five other suspected members of the Smith drug organization. There were 102 calls over a period of seventeen days between the target phone and an unidentified third-party suspected to be a cocaine purchaser.

The extent of the investigation which resulted in the inquiry into Harris' suspected involvement in the Smith drug trafficking organization can only be fully appreciated by reviewing the forty-five page Affidavit of Special Agent Sanders. The Affidavit recounts the investigation of the Smith organization beginning a year prior to the application. We conclude that the affidavit as a whole established probable cause for issuance of the wiretap authorization.

Harris has not shown that either of the statements he identifies were untrue. The occurrence of seventeen calls between the target phone and Smith's phone over a period of approximately seven weeks undergirds the statement that there were "numerous conversations" between Smith and Harris intercepted. The content of conversations between them were "decoded" or interpreted by investigating agents experienced with the Smith operation. The Smith organization had been under investigation for almost a year. Agent Sanders, an experienced Special Agent with the Drug Enforcement Administration, was familiar with drug trafficking operations generally. Special Agent Sanders avers that the conversations were believed to be about narcotics and narcotics trafficking in drug trafficking parlance.

Harris contends that the conversations between himself and Smith were "innocuous" conversations where one party was "checking on" the other party or "checking on another's location,

and telling the other he is waiting on him." In so stating, Harris takes these conversations out of context and divorces them from other information developed in the investigation, as recited in the Affidavit.

In light of other wiretapped conversations, pen registers revealing calls to other members of the Smith organization, confidential source information, as well as visual surveillance of Harris himself interacting with Smith *(ie*. the transfer of a duffel bag of suspected cocaine by Smith into Harris' vehicle; surveillance avoidance so Harris could "dump that shit" and abandon the vehicle), Harris has failed to make a substantial showing that the affiant knowingly and intentionally or recklessly misled the judicial officer concerning the meaning of the conversations. Special Agent Sanders stated that it was believed that the conversations concerned drug trafficking, and the surrounding context of the investigation offered the basis for that belief. All of this information was fully developed in the Affidavit. Harris has failed to offer any suggestion that the statement was untrue. Rather, he claims only that the calls were not numerous and utilized "innocuous" language.

Further, Harris challenges the statement that, in intercepted conversations between Smith and Harris, "Harris had shown a willingness to discuss the acquisition of narcotics more openly over the phone." He contends first that there is no evidence of narcotics discussions held "openly," as he contends that Harris did not discuss narcotics trafficking with Smith. The previous discussion concerning the "decoding" of the conversations applies equally here. Harris appears to urge that there could be no "open" conversation, as there was no actual reference to drugs, or the conversations were otherwise not "open" because they were conducted in code.

Harris takes the statement concerning this purported "openness" out of the context in which it appears in the affidavit. Special Agent Sanders notes in paragraphs preceding the challenged

statement that the investigation into the Smith drug trafficking organization revealed a "concerted effort to avoid incriminating discussions" among the Smith associates. He then made the point that Harris was an individual who had shown a willingness to discuss matters more openly over the phone, which would be beneficial to the investigation, should they be permitted to intercept such conversations from the target phone. Harris' has failed to show that when read in context, the challenged statement is in any way misleading, Harris' dictionary definition of "openly" notwithstanding.

Finally, Harris challenges as insufficient Special Agent Sanders' offer of necessity for the issuance of the wiretap. Contrary to Harris' contention, the affidavit does not simply gloss over other surveillance and investigative techniques as unfeasible.

The affidavit does, in fact, contain a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

The Affidavit contains a fulsome explanation of the manner in which the Smith organization conducted its drug trafficking business and the reasons that physical surveillance, search warrants, and tracking devices were not expedient means of gaining the information sought. The Affidavit also delineated the investigative techniques which were employed, such as trash searches, pen registers, wiretaps, audio, video, and physical surveillance, and the limitations of these procedures in this investigation. Harris' challenge to the offer of necessity is without merit.

Based upon the foregoing findings, the court concludes that Harris has failed to make a substantial preliminary showing of an intentional or reckless false statement necessary to a finding of probable cause.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, George Harris, to suppress wiretap evidence (DN 52) is **DENIED.**

**IT IS SO ORDERED.**

November 3, 2011

**Charles R. Simpson III, Judge
United States District Court**